# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

Before
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**BRIAN K. PARKER
GUNNERY SERGEANT (E-7), U.S. MARINE CORPS**

**NMCCA 201400066
GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 1 October 2013.
**Military Judge:** LtCol David Jones, USMC.
**Convening Authority:** Commanding General, Marine Corps Recruit Depot/Eastern Recruiting Region, Parris Island, SC.
**Staff Judge Advocate's Recommendation:** LtCol R.G. Palmer, USMC.
**For Appellant:** LT Jonathan Hawkins, JAGC, USN.
**For Appellee:** LT Ann Dingle, JAGC, USN.

**22 January 2015**

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of three specifications of attempting to violate a lawful general order, willful disobedience of a lawful order, seven specifications of violation a lawful general order, two specifications of sodomy, four specifications of adultery, and one specification of solicitation of indecent conduct, in violation of Articles 80,

90, 92, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 890, 892, 925, and 934. The military judge sentenced the appellant to confinement for 60 months, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged and, "[s]ubject, to the limitations contained in the [UCMJ], the Manual for Courts-Martial, applicable regulations, and this action," ordered it executed.[1]

The appellant asserts three assignments of error: (1) that the difference in maximum punishments applicable to consensual sexual intercourse prosecuted under Articles 92 and 134, UCMJ, and the maximum punishment applicable to consensual sodomy prosecuted under Article 125, UCMJ, lacks a rational basis and is, therefore, unconstitutional; (2) that the charging scheme unreasonably multiplied the charges for sentencing purposes; and, (3) that his sentence was inappropriately severe.

After carefully considering the record of trial, the submissions of the parties, and their excellent oral arguments, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

**Background**

While on recruiting duty, the appellant tried, unsuccessfully, to establish unduly familiar relationships with three recently recruited Marines in violation of Article 1165, U.S. Navy Regulations (1990). He also sought or engaged in nonprofessional personal relationships with seven potential recruits, or "poolees," in violation of a lawful general order governing recruiter conduct.[2] These relationships involved making inappropriate comments and sending vulgar text messages to poolees, often regarding incest and child sexual abuse. The relationships also involved engaging in consensual sodomy with two poolees (Ms. SMH and Ms. MLH), committing adultery with these two and one other poolee (Ms. LJY), and soliciting one of these poolees (Ms. SMH) to covertly photograph or videotape her mother and sister (a recent recruit) in a state of undress.

---

[1] "Under Article 71(c)(1), UCMJ, a punitive discharge cannot be ordered executed until, after the completion of direct appellate review, there is a final judgment as to the legality of the proceedings." *United States v. Bailey*, 68 M.J. 409, 409 (C.A.A.F. 2009) (summary disposition). However, "to the extent that the convening authority's action purport[s] to execute the [dishonorable] discharge, it [is] a nullity." *Id.*

[2] Depot Order 1100.5A, ¶4 (24 Mar 2005).

Although unsuccessful in his attempts to seduce Ms. SMH's sister, the appellant did commit adultery with Ms. SMH's mother.

During his conversations with several of the potential recruits involved, the appellant repeatedly claimed he had had sex with his ten-year-old son, had engaged in sex with his ex-wife while their son watched or participated, had sex with his minor niece, and had engaged in bestiality. He repeatedly expressed to Ms. SMH his desire to engage in group sex with Ms. SMH and her sister and mother. Texts between the appellant and Ms. SMH discussed how they could rape Ms. SMH's sister after getting the sister drunk. The appellant also shared with Ms. SMH compromising photos that other poolees and a former recruiter in his office had sent him, and discussed in detail with Ms. SMH his sexual activity with other poolees and the fellow recruiter.

After the investigation into his misconduct had begun, the appellant received a military protective order (MPO) to have no contact with those involved in the investigation. He subsequently violated that order by marrying a Marine specifically named in the MPO, with whom he was suspected of having committed adultery.[3]

Additional facts necessary to address the assignments of error will be provided below.

## Maximum Punishment under Article 125

The appellant does not claim the offense of sodomy, as proscribed by Article 125, UCMJ, and limited by *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004), is unconstitutional. Rather, he claims the Don't Ask, Don't Tell Repeal Act of 2010[4] removed any rational basis for treating consensual sodomy differently from consensual sexual intercourse for sentencing purposes, and that this present lack of rational basis renders the Article 125, UCMJ, maximum punishment unconstitutional. He bases his claim on the fact that an act of consensual sodomy, potentially punishable under Articles 92, 125, and 134, UCMJ, carries a maximum sentence including five years' confinement, while consensual sexual intercourse, potentially punishable

---

[3] The appellant divorced his first wife the day before he married the Marine and violated the MPO. He was married to his first wife throughout the period in which he committed the balance of the charged misconduct.

[4] Pub. L. No. 111-321, 124 Stat. 3515 (2010).

3

under Articles 92 and 134, UCMJ, has a maximum punishment including only two years' confinement.

As a threshold matter, we must address whether the appellant waived review of the issue by not raising it at trial. Here, the appellant's trial defense counsel (TDC) concurred with the military judge's charge-by-charge calculation of the applicable maximum punishment. In doing so, he agreed with the military judge's statement that each Article 125, UCMJ, specification carried a maximum punishment of five years. Record at 22. While the military judge and TDC did not specifically discuss the equal protection claim now raised on appeal, they did walk through how they arrived at the 44-year maximum confinement. The appellant proceeded to plead guilty, with the only open issue being a motion for appropriate relief based upon an unreasonable multiplication of charges.[5] The appellant in no way indicated that he intended his plea to be conditional.

"'An unconditional plea of guilty waives all nonjurisdictional defects at earlier stages of the proceedings.'" *United States v. Lee*, 73 M.J. 166, 167 (C.A.A.F. 2014) (quoting *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010)). The limitations on this broad rule apply only in situations "'where on the face of the record the court had no power to enter the conviction or impose the sentence.'" *Id.* at 170 (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)). There is, however, a presumption against the waiver of a constitutional right absent a clear relinquishment of the right by the appellant. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). Also, incorrect advice regarding the maximum punishment can, under certain circumstances, render a plea improvident. *See United States v. Castrillon-Moreno*, 7 M.J. 414, 414-15 (C.M.A. 1979). Accordingly, we will assume, for the sake of this analysis, the issue was forfeited, not waived.

We review whether a statute is unconstitutional as applied *de novo,* conducting a fact-specific inquiry; when such a claim is raised for the first time on appeal, we review for plain error. *Goings*, 72 M.J. at 205. We may grant relief "only where: (1) there was error, (2) the error was plain and obvious, and, (3) that error materially prejudiced a substantial right of the [appellant]." *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011) (citation omitted).

---

[5] The military judge ruled on this motion immediately before announcing his findings.

1. *Error*

    The appellant claims the military judge violated the appellant's right to equal protection when he applied Article 125's maximum punishment of five years for each sodomy specification.  We disagree.

    An equal protection claim necessarily requires an appellant demonstrate how he is being treated differently than someone else who is similarly situated.  Here, the appellant has not done so.  He has not shown how the Government, in choosing to charge him with sodomy (with its attendant five-year maximum punishment) treated him any differently than other servicemembers in similar circumstances.  Instead, he points only to the disparity in maximum punishment applicable to the various acts of misconduct he alone committed.  This is no more an equal protection issue than is any decision to charge an accused with the most serious charge supported by his actions.  Absent any evidence that the Government is, without a rational basis, treating that accused *differently than another*, this is a matter within the prosecutor's prerogative.  *See United States v. Armstrong,* 517 U.S. 456, 465 (1996) (discussing "[j]udicial deference to the decisions of these executive officers").  The Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."  *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) (addressing two criminal statutes applying different punishments to identical criminal acts).  "The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause."  *Id*. at 125 (citations omitted).

    Furthermore, even assuming this issue is properly characterized as a question of equal protection, we find no error.  Article 125, UCMJ, lists four possible maximum sentences whose applicability depends on whether the sodomy was: (1) performed by force or without consent; (2) with a child at least twelve, but less than sixteen years of age; (3) with a child under the age of twelve; or (4) "Other cases."  This last category encompasses a broad range of unnatural carnal copulation, to include both bestiality and, in some instances, consensual sodomy.

    In *Marcum*, the Court of Appeals for the Armed Forces (CAAF) created a three-part test to determine whether an act of consensual sodomy falls outside the protected liberty interest

5

recognized by the Supreme Court in *Lawrence v. Texas*, 539 U.S. 558 (2003).  This test asks:  (1) did the conduct involve private, consensual sexual activity between adults; (2) did the conduct involve any of the behavior or factors identified by the Supreme Court as not involved in *Lawrence*; and (3) are there "factors relevant solely in the military environment" that affect the applicability of the *Lawrence* liberty interest? *Marcum*, 60 M.J. at 206-07.  These behaviors and factors themselves can involve a broad range of activity, some certainly more egregious than others.

The maximum sentence provided by the President for any punitive article in the UCMJ necessarily covers the entire range of criminal activity encompassed by that offense.  Even where aggravating factors are identified as deserving of higher maximum punishments, the specified limitations are just that – an upper limit on the range of permissible punishments, not an indication of an appropriate sentence for a given offense.  The appellant's argument that his exposure to a higher maximum punishment for consensual sodomy when compared to consensual sexual intercourse misses the point that Article 125, UCMJ, (and its maximum punishment for "Other cases") covers a range of unlawful activity that includes far more than a private, consensual sexual act between two adults.  That the appellant's acts of sodomy fall under a punitive article that provides for *a broader range of punishment applicable to a broader range of misconduct*, does not establish that Congress or the President is treating similar consensual sexual acts in a constitutionally impermissible dissimilar manner.

2. *Plain Error*

Assuming, *arguendo*, that the military judge erred, we look to see whether that error was plain and obvious.  "In determining whether [an] error was clear or obvious, we look to law at the time of the appeal." *United States v. Knapp*, 73 M.J. 33, 37 (C.A.A.F. 2014) (citations omitted).  The specific question raised by the appellant is far from well-settled; as the appellant correctly states, "[t]his is an issue of first impression."  Appellant's Brief of 14 Jul 2014 at 7.  The only previous indication that this issue may be worthy of examination is in a footnote in a 2013 CAAF opinion.[6]  Such dicta, even from our superior court, is insufficient to meet the high burden of

---

[6]  The CAAF identified, but did not address, a potential issue related to the "rational basis for the disparate sentencing scheme in the wake of The Don't Ask, Don't Tell Repeal Act of 2010 . . . between sodomy and other offenses implicating sexual acts under the UCMJ." *United States v. Castellano,* 72 M.J. 217, 220 n.7 (C.A.A.F. 2013).

demonstrating plain error. Regardless, even if we *further* assume the military judge committed plain error, the appellant has failed to establish that any alleged error on this matter, plain or otherwise, materially prejudiced a substantial right.

3. *Material Prejudice*

The maximum punishment in this case, as calculated by the military judge and agreed to by all parties at trial, was confinement for 44 years, reduction to pay grade E-1, total forfeitures, a fine, and a dishonorable discharge. Assuming the appellant is correct that the maximum punishment for each sodomy specification should have included only two years' confinement, the total maximum confinement possible would have been 38 years. The military judge sentenced the appellant to 60 months. Given the great disparity between the potential and adjudged sentence, we do not believe the six-year reduction argued by the appellant would have affected the ultimate sentence. The consensual sodomy did not stand out from the appellant's other criminal acts. All of the sexual offenses charged were consensual in nature, and, other than adultery with the mother of a recent recruit and a poolee, took place in the context of inappropriate personal relationships with potential recruits. There is nothing in the record to indicate the consensual acts of sodomy were treated any differently than the acts involving sexual intercourse. Neither the military judge (during the *Care* inquiry) nor trial counsel (in argument) appear to consider them as being any more egregious than the appellant's other sexual misconduct.

Accordingly, despite making numerous assumptions in the appellant's favor, we find this assignment of error to be without merit.

## Unreasonable Multiplication of Charges

We review a military judge's decision to deny relief for an unreasonable multiplication of charges using an abuse of discretion standard. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012). A military judge abuses his discretion "when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). The framework for analyzing unreasonable multiplication of charges was explained in *United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001): (1) did the accused object at trial that there was an unreasonable multiplication of charges; (2) is each charge and specification aimed at distinctly separate criminal acts; (3) does the number of

charges and specifications misrepresent or exaggerate the appellant's criminality; (4) does the number of charges and specifications unreasonably increase the appellant's punitive exposure; (5) is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

At trial, TDC asked the military judge to merge several of the charges for sentencing purposes, claiming the charging scheme represented an unreasonable multiplication of charges. Specifically, TDC requested that the sodomy, adultery and orders violation charges related to Ms. MLH and Ms. SMH, as well as the adultery and orders violations charges concerning Ms. LJY, be considered for sentencing as only involving one charge per woman. The military judge merged the sodomy and adultery charges regarding Ms. MLH, but denied the remainder of TDC's request.

Noting that the appellant met the first part of the *Quiroz* test by objecting at trial, the military judge addressed each of the remaining *Quiroz* factors on the record.

a. Ms. MLH. The acts of adultery and sodomy with Ms. MLH were charged as having occurred on divers occasions during the same period and at the same location. As there was no evidence presented that the adultery and sodomy were not part of the same encounter, the military judge merged the adultery and sodomy specifications involving Ms. MLH, finding that the charging scheme both exaggerated the appellant's criminality and unfairly increased his criminal exposure. He did not merge these two specifications with the specification alleging the appellant wrongfully sought or engaged in an unprofessional relationship with Ms. MLH, finding that the violation of the lawful general order also "includes all the text messages [and] inappropriate pictures" and, therefore, was aimed at different criminal acts. Record, at 299.

b. Ms. SMH. The appellant was charged with and pleaded guilty to committing adultery and sodomy with Ms. SMH during two separate time periods. Additionally, the Stipulation of Fact[7] indicated these acts occurred on two separate occasions. Accordingly, the military judge did not merge these two offenses. He also declined to merge either the adultery or sodomy charge with the charge of violating a lawful general order, stating the Article 92, UCMJ, offense included different conduct, namely, "text messages" and "[p]ictures of naked poolees." *Id*. at 300. He further found that the charges

---

[7] Prosecution Exhibit 1.

concerning Ms. SMH did not exaggerate the appellant's criminality or unfairly increase his criminal exposure.

c. Ms. LJY. The military judge declined to merge the adultery and orders violation charges, stating the latter involved more than just the acts of adultery with Ms. LJY. Accordingly, he found that the charges were aimed at distinctly separate acts, and did not exaggerate the appellant's criminality or unfairly increase his criminal exposure.

The military judge concluded by finding no evidence of prosecutorial overreach or abuse of discretion in the drafting of the charges.

We find the military judge's findings wholly supported by the record. We further conclude that he correctly applied the applicable law, and was correct in finding the charging scheme did not present an unreasonable multiplication of charges. Following the above analysis, we find that the military judge did not abuse his discretion by declining, in part, TDC's request.

## Sentence Appropriateness

The appellant argues that his sentence to 60 months' confinement, reduction to pay grade E-1, and a dishonorable discharge was inappropriately severe. We disagree. In accordance with Article 66(c), UCMJ, a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)). While this court has a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Healy*, 26 M.J. 396.

After review of the entire record, we find that the sentence is appropriate for this offender and his offenses. The appellant was a senior staff noncommissioned officer assigned to recruiting duty. As such, he represented the Marine Corps and was often the first, and many times the only, contact potential

9

recruits, their families and school officials had with this honorable institution. He was entrusted with great responsibility. He responded by repeatedly violating this trust, using his official position to seek sexual relationships with recruits, potential recruits, and their mothers.

During his unsworn statement, the appellant expressed no remorse for the lasting damage he inflicted on several families, including his own. His many statements regarding incest and child sexual abuse led to an investigation of unfounded allegations against his ex-wife. His text conversations with Ms. SMH greatly harmed her relationship with her family. Finally, he did not inform his current wife of the MPO or the on-going investigation until shortly *after* their wedding.

The appellant's actions failed to comply with the expectations of a senior enlisted leader, and his behavior clearly reflected discredit upon the Service. The fact his acts of sexual misconduct may have all been consensual does not affect our conclusion that the adjudged and approved sentence in no way exceeds what the appellant deserved.

The adjudged sentence is also within the range of sentences the appellant bargained for under the terms of his pretrial agreement. He offers nothing to explain how a sentence falling within a limited range he knowingly and voluntarily negotiated is now, once imposed, inappropriately severe. To grant sentence relief at this point would be to engage in clemency, a prerogative reserved for, and in this case unexercised by, the convening authority.

## Conclusion

The findings and sentence as approved by the CA are affirmed.

Senior Judge MCFARLANE and Judge BRUBAKER concur.

For the Court

R.H. TROIDL
Clerk of Court

10